**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**LOUIS RAY CHAPMAN,**

    Plaintiff,

v.                                      Civil Action No. **3:20CV292**

**FRANCIS GILLUS JORDAN,** *et al.,*

    Defendants.

**MEMORANDUM OPINION**

Louis Ray Chapman, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] On November 2, 2020, the Court directed Chapman to file a particularized complaint within thirty (30) days of the date of entry thereof. After receiving an extension of time, on January 11, 2021, Chapman filed a Particularized Complaint. (ECF No. 21.) The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and on several pending motions filed by Chapman.

**I.      PRELIMINARY MOTIONS**

Accompanying his Particularized Complaint, Chapman filed yet another Motion for Preliminary Injunction (ECF No. 24) and a Motion for Recusal (ECF No. 22) both of which will be DENIED as discussed below.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

In his Motion for Recusal, Chapman cites a variety of past rulings that he deems unfavorable. These form the basis of his that the undersigned to recuse himself. The bar for recusal is high, as "courts have only granted recusal motions in cases involving particularly egregious conduct." *Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011). Contrary to Chapman's complaint, "judicial rulings alone almost never constitute a valid basis for bias" or a valid reason to demand recusal of a judge. *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted). Chapman has not demonstrated that the Court harbors any bias against Chapman or shown any circumstance in which the impartiality of the undersigned might be reasonably questioned. *See* 28 U.S.C. §§ 144,[2] 455.[3] Accordingly, Chapman's Motion for Recusal (ECF No. 22) will be DENIED.

---

[2] The statute provides, in relevant part:

> Whenever a party to a proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . . A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

[3] The statute provides, in relevant part:

> **(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> **(b)** He shall also disqualify himself in the following circumstances:
>     **(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455.

In his second Motion for Preliminary Injunction, although Chapman briefly mentions his underlying claims, Chapman truly asks the Court to force the institution to open the law library for him and " 'DEMANDS' Defendants use 'SOCIAL DISTANCING' and 'OPEN' the law library." (ECF No. 25, at 3.)  Plaintiff's demands in the Motion for Preliminary Injunction are not related to his claims in his Particularized Complaint.[4]  Accordingly, the Motion for Preliminary Injunction (ECF No. 24) will be DENIED.

## II.    PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A.  The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims in which the "'factual contentions are clearly baseless.'"  *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This

---

[4] Plaintiff clearly indicates in his Particularized Complaint, "[t]his is not about access to the Court or the law library.  This concerns Chapman being treated different than other prisoners." (ECF No. 21, at 3.)  Plaintiff's claims also arise from a period of February 26, 2019 until January 2, 2020, well before the closure of the library due to COVID-19.

principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable," *id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

4

### III.   CHAPMAN'S ALLEGATIONS

In his Particularized Complaint, Chapman names the following parties as Defendants: Francis Gillus Jordan, Assistant Law Librarian at Lawrenceville Correctional Center "("LCC"); Marc Finney, Law Librarian at LCC; J. Worsham, Education Director at LCC; and Global Experts and Outsourcing, Inc. ("GEO Group") the company that operates LCC.  (ECF No. 21, at 1–2.) Chapman's allegations are rambling and somewhat difficult to discern.   Chapman alleges as follows, in relevant part:[5]

### STATEMENT OF FACTS

1.    This is not about access to the Court or law library.[6]   This concerns Chapman being treated different than other prisoners in a similar situation. Deliberate indifference and fraud.

2.    Francis Jordan, Mark Finney, and J. Worsham allowed multiple patrons and inmate law clerks to use the law library and legal computers the same day Chapman was scheduled but Chapman was denied or told closed.

3.    Defendants allowed inmate law clerk Sam Harris to stop Chapman from using legal computers on his scheduled days.

4.    Francis Jordan committed fraud; practicing law without a license.
. . . .

7.    Chapman, inmate law clerks, and patrons all have a seven (7) digit state identification number for the Virginia Department of Corrections and are housed at Lawrenceville Correctional Center.  All are in the same class.

8.    February 26, 2019.  Francis Jordan falsely claimed, "please be advised that on Monday, February 25, 2019, Offender Chapman was scheduled for computer #4 at 2:00 p.m.   The offender who was using computer #4 previously was on a court deadline.  The offender had priority.  (please see attachment) . . . Offender Chapman made a false statement when he stated that the offender utilized the computer for both periods."  There was no attachment.  Donald Lee Hinton, offender, told Chapman that he did not

---

[5] The Court corrects the spelling, punctuation, and capitalization, and omits the emphasis in the quotations from Chapman's Particularized Complaint.  The Court also omits the secondary citations to various exhibits in Chapman's Particularized Complaint.

[6] Based on Chapman's express statement, the Court will not construe Chapman to raise such a claim.  This also seems to indicate that Chapman had adequate access to the law library.

have a deadline and used the computer both periods. Hinton will be a witness. Chapman treated different. Denied legal computer time for Lexis Nexis.

9.      March 8, 2019. Francis Jordan falsely stated, "Wednesday, March 7, 2019, Offender Chapman #1072559 entered at 7:45 a.m. at which time I (Mrs. F. Jordan) advised him to take a seat and wait until the law library officially opened." This statement is false. 7:55 a.m. Chapman's POD was called to breakfast. 8:20 a.m. Chapman entered the law library and signed the log. When Chapman arrived, inmate Sanford and another inmate were on the legal computers. Sanford will be a witness. Inmates Hariston and Rogopolus were sitting at a table sorting "Americans With Disabilities Act" papers. They told Chapman they had been waiting since 8:00 a.m. for a computer. Sam Harris, inmate law clerk, would not allow them on a computer. Both will be witnesses. Chapman put his legal material on the table and sat with them. Chapman did not speak to Jordan when he came in and Jordan did not speak to him.

10.     A few minutes later, Chapman went to Jordan, told her four (4) computers were available, asked if he could use one. Sam Harris, inmate law clerk, jumped up from his desk to tell Jordan he was waiting for other inmates. Jordan, Finney, and Worsham did not allow Chapman on the computers as they did Sanford and other inmates, treating Chapman different.

11.     April 22, 2019, 12:30 p.m. Chapman showed Jordan [a] Memorandum Order from April 17, 2019, directing him to file a particularized complaint from the court. . . . with a fourteen (14) day deadline. Jordan said it was not a deadline and gave Chapman only three (3) days.

12.     A few minutes later, Captain N.C. Edmonds came in [and] called Chapman to the office. Chapman told Edmonds he had a fourteen (14) day deadline and Jordan only have him three (3) days. Jordan said, "No you don't have a deadline." Chapman showed Edmonds page 2 [of the Memorandum Order] . . . . Edmonds asked Chapman, "When did he get the Order?" Chapman told him today (April 22, 2019). Jordan said, "No you didn't, it came in the mail." Chapman told Edmonds, Mr. Judkins, his counselor gave it to him at 9:30 a.m. 42219. Chapman signed the log book. He could check. Chapman told Edmonds the order is stated the 17th. Edmonds said, "That's five (5) days ago. You only have nine (9) left and two (2) are weekend days and the law library is closed." Later, Edmonds told Chapman, Jordan wanted him locked up. Edmonds told Jordan, "he hasn't done anything."

13.     Inmates Hinton, Hariston, Rogopolus, Sanford, and Thacker get thirty (30) days on deadlines. Chapman only got three (3). Defendants treat Chapman different.

14.     April 22, 2019, Edmonds told Chapman, "security does not close the law library."

15.     April 25, 2019, J. Worsham, responding to request: "The LVCC law library hours of operation is monitored and controlled by security. The law library hours . . . are the direction of security . . . .

16.     December 23, 2019, Chapman's scheduled law library day. Defendants told him law library closed. Chapman asked why were inmate law clerks there doing legal work? Finney said, "They have work to do." Meaning Chapman's legal work is not as important. Treating Chapman different.

17.     December 24, 2019, Chapman's scheduled library day. Defendants lied to Chapman saying, "security closed the law library. If security told them to open, they would. Chapman got Edmonds from the dining hall. Edmonds again told Chapman, "Security does not close the law library."

18.     Defendants told Edmonds, J. Worsham said, "If school closed law library closed." Totally different from what they told Chapman.

19.     December 26, 2019, Defendants opened the law library for inmate Matthew Thacker and another inmate with no school and no deadline. Thacker will be a witness.

20.     December 30, 2019, J. Worsham responding to request. "Effective 12/24/19 (after 11:00 a.m. count time), the law library will be open when school is not in session. The library will be closed, however. The law library will be available to those who have signed up with scheduled times."

21.     December 31, 2019, same day Chapman received J. Worsham's response of December 30, 2019. Chapman was scheduled for law library. Defendants told Chapman, law library closed. But again, inmate law clerks were there.

. . . .

29.     January 18, 2019, Memorandum Order from this Court. [The order instructed Chapman to pay $400.]

30.     January 23, 2019, Jordan referring to Memorandum Order stated, "Please be advised that this isn't a court deadline. This order is advising you that you have (11) days to pay the filing fee or submit the attached *in forma pauperis*." Jordan is wrong. Chapman turned down for *in forma pauperis* because he has too much money. Chapman asked the Court for clarification. The Court was kind enough to send the Memorandum Order.

31.     Had Chapman followed Jordan's unsolicited wrong legal advice and submitted another *in forma pauperis* statement against the Court's explicit order, his civil rights action would have been dismissed.

7

32. There was no either/or in the Court's Memorandum Order. There was, Chapman must pay the $400 filing fee.

33. Because Jordan denied Chapman any law library time to research filing fees; it was fourteen (14) days late.

34. The record indicates Jordan's operation of providing "legal advice" and "services" are in the nature of practicing law. In the "practicing law" without a license, Jordan elected to employ documents that guise her operation with a cloak of legitimacy to people without legal training, who are unable to distinguish between legitimate and illegitimate providers of legal services.

The record indicates Jordan's complete failure to disclose she has no legal degree or training. Francis Jordan is guilty of practicing law without a license.

(*Id.* at 3–6, 8–9 (second and third omission in original.)  The Court construes Chapman to raise the following claims for relief:

Claim One:   Defendants Jordan, Finney, and Worsham violated Chapman's Fourteenth Amendment right to equal protection[7] when they: (a) "allowed multiple inmate patrons and law clerks to use the law library . . . the same day Chapman was scheduled" (*id.* at 7), but Chapman was not allowed to access the library; and (b) other inmates were allowed "thirty (30) days on deadlines. Chapman only got three (3)." (*Id.* at 5.)

Claim Two:   Defendant Jordan "committed fraud, practicing law without a license" (*Id.* at 7–8.)[8]

---

[7] "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 2.

[8] Chapman also alleges that the conduct pertaining to the law library access violates his "First Amendment right to petition the Government for a redress of grievance, Sixth Amendment right to court, Eighth Amendment right understood to protect the individual and standard of society." (ECF No. 21, at 7.) Similarly, in Claim Two, Chapman states Jordan's conduct violates his "First, Sixth, Eighth and Fourteenth Amendment." (*Id.* at 9.) Chapman later provides a brief recitation of the law for each of these amendments. (*Id.* at 9–10.) Beside these blanket string citations, Chapman wholly fails to provide how the alleged conduct implicates any of these rights, and the Court will not construct claims for him from sentence fragments. "Where the context . . . makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

8

## IV.   ANALYSIS

It is both unnecessary and inappropriate to engage in an extended discussion of Chapman's theories for relief because it is evident from the tone of his Particularized Complaint that his intent in bringing this action is to harass the Defendants and not to litigate a true constitutional deprivation. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (emphasizing that "abbreviated treatment" is consistent with Congress's vision for the disposition of frivolous or "insubstantial claims" (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). For the reasons stated below, Chapman's Particularized Complaint will be DISMISSED for failure to state a claim upon which relief may be granted and as frivolous and malicious.

### A.   GEO Group

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). A private corporation cannot be held liable "for torts committed by [its employees] when such liability is predicated upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Instead, "a private corporation is liable under § 1983 only when an official policy or custom of the Corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted). Moreover, "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (citing *U.S. ex rel. Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968)).

At most, Chapman indicates that he is "suing GEO" and states: "state prisoners may sue private corporations under section 1983." (ECF No. 21, at 10 (citation omitted).) This statement

is wholly insufficient to state a claim for relief against the GEO Group.  Accordingly, the GEO Group, and any claim against it, is DISMISSED.

### B.    Claim Two

In Claim Two, Chapman contends that Defendant Jordan "committed fraud, practicing law without a license."  (*Id.* at 7–8.)  Chapman faults Defendant Jordan for allegedly providing incorrect information to Chapman after she read a Memorandum Order from the Court directing him to pay the filing fee.  As a preliminary matter, Chapman fails to identify how this conduct would implicate a federal law or a constitutional right.  For this reason alone, Claim Two may be dismissed.  Additionally, on its face, this claim is entirely frivolous, malicious, and fails to state a claim for relief.  Merely describing the contents of a Memorandum Order cannot be interpreted as providing legal advice or fraud.  As discussed below in Part V, it is evident that this claim was brought by Chapman with an intent to harass the librarian because the library is not managed to his liking.  Accordingly, Claim Two will be DISMISSED as frivolous, malicious, and for failure to state a claim for relief.[9]

### C.    Claim One

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439

---

[9] Even if Chapman had alleged a valid claim that Defendant Jordan had engaged in the unauthorized practice of law, which he clearly has not, this would not be a claim Chapman may bring in this Court.  Under Virginia law, "[a]ny person who practices law without being authorized or licensed shall be guilty of a Class I misdemeanor."  Va. Code. Ann. § 54.1–390 (West 2021).  Contrary to Chapman's suggestion, "[t]he Court cannot initiate criminal or regulatory investigations of any defendant.  Rather, authority to initiate criminal complaints rests exclusively with state and federal prosecutors."  *Barron v. Katz*, No. 6:17–CV–195–KKC, 2017 WL 3431397, at *1 (E.D. Ky. Aug. 9, 2017) (citing *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986)).  Furthermore, Chapman as "a private citizen lacks a judicially cognizable interest in the [criminal] prosecution or nonprosecution of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution.").

(1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Chapman must allege facts indicating that: (1) he and a comparator inmate were treated differently and were similarly situated; and (2) the different treatment was the result of intentional or purposeful discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). However, the Equal Protection Clause does not require "things which are different in fact or opinion to be treated in law as though they were the same." *Moss v. Clark*, 886 F.2d 686, 691 (4th Cir. 1989) (quoting *Plyler*, 457 U.S. at 216). Instead, "the class to which [an inmate] belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject." *Id.* (alteration in original) (citation omitted).

In Claim One (a), Chapman contends that Defendants Jordan, Finney, and Worsham "allowed multiple inmate patrons and law clerks to use the law library . . . the same day Chapman was scheduled," but that Chapman was not allowed to access the library, violating his right to equal protection. (ECF No. 21, at 3–6.) Chapman identifies several inmates in his Particularized Complaint whom he contends are similarly situated to himself. First, it is evident that several of these inmates, including Inmates Hariston and Rogopolus, were also not allowed to use computers on April 22, 2019. (*See id.* at 4.) Therefore, these inmates were not treated differently from Chapman. Moreover, Chapman complains that inmate law clerks were permitted to use the law library on a day that the library was closed, and Chapman was not. Chapman fails to allege facts indicating that he and the inmate law clerks were similarly situated because the inmate law clerks were employees of the law library, not mere users, like Chapman. *Moss*, 886 F.2d at 691. From Chapman's allegations, it appears that three inmates may possibly be similarly situated to Chapman and were treated differently from him on three occasions. Chapman identifies these comparators as Donald Hinton, an inmate named Sanford, and an inmate named Matthew Thacker.

11

With respect to Hinton, Chapman states that on February 25, 2019, he was scheduled to use the computer at 2:00 p.m., but he was not allowed to use computer #4 because the offender currently on computer #4 "had priority." (ECF No. 21, at 4.) Chapman then states that: "Donald Lee Hinton, offender, told Chapman that he did not have a deadline and used the computer both periods. Hinton will be a witness. Chapman treated different. Denied legal computer time for Lexis Nexis." (*Id.*) Although an inference could be drawn, Chapman never claims that Hinton was the inmate on the computer that Chapman was scheduled to use. Nevertheless, for the sake of this opinion, the Court assumes that Hinton was similarly situated and treated differently than Chapman.

> With respect to the inmate named Sanford, Chapman alleges that:
>
> March 8, 2019. Francis Jordan falsely stated, "Wednesday, March 7, 2019, Offender Chapman #1072559 entered at 7:45 a.m. at which time I (Mrs. F. Jordan) advised him to take a seat and wait until the law library officially opened." This statement is false. 7:55 a.m. Chapman's POD was called to breakfast. 8:20 a.m. Chapman entered the law library and signed the log. When Chapman arrived, inmate Sanford and another inmate were on the legal computers. Sanford will be a witness.
> . . . .
> A few minutes later, Chapman went to Jordan, told her four (4) computers were available, asked if he could use one. Sam Harris, inmate law clerk, jumped up from his desk to tell Jordan, he was waiting for other inmates. Jordan, Finney, and Worsham did not allow Chapman on the computers as they did Sanford and other inmates, treating Chapman different.

(*Id.* (paragraph numbers omitted).) Chapman fails to indicate whether he and Sanford were similarly situated beyond the fact that they were both inmates who wanted to use the library at that time. It is unclear whether either Chapman or Sanford were scheduled to use the library that day, or if either had legal deadlines. On the facts alleged, Chapman fails to show that Sanford was similarly situated and treated differently.

With respect to Matthew Thacker, Chapman states, in sum, that on December 26, 2019, "Defendants opened the law library for inmate Thacker . . . with no school and no deadline." (ECF

12

No. 21, at 6.) However, it is unclear if Chapman was scheduled for the library that day or if he requested to use that library that day and was denied access. Thus, on these vague allegations, Chapman fails to allege facts that would indicate that he and Thacker were similarly situated and treated differently.

Even if the Court were to construe Chapman to have identified an appropriate comparator inmate in Hinton, Sanford, or Thacker, Chapman fails to allege facts plausibly suggesting that any different treatment on these two occasions was the result of intentional or purposeful discrimination. At most, Chapman simply repeats that the Defendants treated him differently.[10] This is insufficient to make the threshold showing for an equal protection claim. *See Iqbal*, 556 U.S. at 680 (explaining that "bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" do not state a claim for relief (citations omitted)); *see also Snowden v. Hughes*, 321 U.S. 1, 8 (1944) (explaining that "a discriminatory purpose is not to be presumed, there must be a showing of 'clear and intentional discrimination'" (citations omitted)).[11] Rather, Chapman's allegations are nothing more than "naked assertion[s] devoid of further factual development." *See Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted) (explaining that "an unadorned, the defendant-

---

[10] It is also apparent from Chapman's Particularized Complaint that, on the day that Sanford was using the computer and Chapman wanted to use an empty computer, other inmates were scheduled to use the computer at that time because Chapman contends that the inmate law clerk told Jordan "he was waiting for other inmates." (*See* ECF No. 21, at 5.) Thus, Chapman's own allegations indicate that his inability to use a computer at that time was not the result of intentional discrimination.

[11] Although the Supreme Court and the United States Court of Appeals for the Fourth Circuit have recognized a "class of one" Equal Protection claim, Chapman's allegations are insufficient here to make out such a claim. *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016). To state a "class of one" equal protection claim, a plaintiff must "allege[] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (2005) (citation omitted). Chapman fails to allege facts here indicating that he was "arbitrar[ily] singl[ed]-out" by Defendants. *See id.*

13

unlawfully-harmed-me accusation" will not suffice to state a claim).   Moreover, as discussed below, this action is malicious in its current form.   Accordingly, Claim One (a) will be DISMISSED WITHOUT PREJUDICE.

Claim One (b) is even more vague and unsubstantiated.   In Claim One (b), Chapman contends that Defendants Jordan, Finney, and Worsham violated Chapman's Fourteenth Amendment right to equal protection because other inmates were allowed "thirty (30) days on deadlines.   Chapman only got three (3)."   (ECF No. 21, at 5.)   The sum of Chapman's allegations with respect to this claim are:   "Inmates Hinton, Hariston, Rogopolus, Sanford, and Thacker get thirty (30) days on deadlines.   Chapman only got three (3).   Defendants treat Chapman different." (*Id.*)   Chapman fails to allege facts indicating that he and these inmates were similarly situated or that any differential treatment was the result of intentional or purposeful discrimination.   Rather, it is apparent from Chapman's allegations that the "deadlines" that Chapman refers to are those deadlines set by the Court.   Each deadline would be set according to the Court's order.   With respect to the Memorandum Order Chapman references in this claim, it provided Chapman with fourteen days to file a particularized complaint.   (ECF No. 21, at 5.)   Therefore, Chapman would not need "thirty (30) days" on this deadline.   Thus, he cannot show that these inmates are similarly situated to him on these vague factual allegations, and he fails to make the threshold showing for an equal protection claim.   Accordingly, Claim One (b) will be DISMISSED WITHOUT PREJUDICE.

## V.      THE ACTION IS MALICIOUS

Congress recognized that a litigant "whose filing fees are assumed by the public, unlike a paying litigant lacks an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

> It is quite clear that Congress, while intending to extend to poor and meritorious suitors the privilege of having their wrongs redressed without the

> ordinary burdens of litigation, at the same time intended to safeguard members of
> the public against an abuse of the privilege by evil-minded persons who might avail
> themselves of the shield of immunity from costs for the purpose of harassing those
> with whom they were not in accord, by subjecting them to vexatious and frivolous
> legal proceedings.

*O'Connell v. Mason*, 132 F. 245, 247 (1st Cir. 1904). Thus, the courts are charged with dismissing

an action proceeding *in forma pauperis* at any time during the course of the litigation that it

becomes clear that the action is frivolous or malicious. 28 U.S.C. §§ 1915A, 1915(e)(2); *see also*

*White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993). This Court has observed:

> A litigant may be deemed to act maliciously if his actions [i]mport a wish
> to vex, annoy, or injure another, or an intent to do a wrongful act, and may consist
> in direct intention to injure, or in reckless disregard of another's rights. Therefore,
> the court must assess the character of the allegations insofar as they indicate a
> motive on the part of the plaintiff to merely harass or vex the defendants rather than
> to seek redress for a legitimate legal claim.

*Cain v. Virginia*, 982 F. Supp. 1132, 1136 (E.D. Va. 1997) (alteration in original) (quotation marks

and citations omitted). Further, "[t]he courts have long recognized that inmate complaints against

state officials are a particularly fertile arena for frivolous and malicious litigation." *Id.* (citing

*Daye v. Bounds,* 509 F.2d 66, 68 (4th Cir. 1975)). This is true, in part, because incarcerated

litigants "possess both time and dissatisfactions in abundance." *Cochran v. Morris*, 73 F.3d 1310,

1316 (4th Cir. 1996). In ascertaining whether a particular action is malicious, the Court's review

is not limited to the current complaint but is guided by the plaintiff's past litigious conduct and the

tone of his or her current allegations. *See id.* at 1310, 1316–17. Thus, the Court may draw on its

previous experience in evaluating the character of the present Particularized Complaint.

Pursuant to these governing principles, the Court finds that Chapman fails to bring this

action in good faith to vindicate his legal rights, but instead brings it maliciously, to harass the law

librarians and educators whom he interacts with frequently because he is a particularly litigious

inmate. Chapman has clearly managed to litigate his actions in this Court and had access to the

15

library during the time period leading to the allegations in the Particularized Complaint.[12] Moreover, the manner in which Chapman has pled his claims resounds with indignation. Chapman essentially points a finger at Defendants and calls them liars because he is aggrieved with law library policies and closures. The Particularized Complaint sounds more in an intent to harass Defendants for not operating the library in the manner that Chapman prefers than in an intent to litigate an equal protection claim. Accordingly, the Court also dismisses this action as malicious. *See Cain*, 982 F. Supp. at 1136–38 (citations omitted) (observing that where "the tone of Plaintiff's allegations indicates that he is bringing his suit merely to satisfy his desire for vengeance against the Defendants and not to rectify any wrong done to him, then the suit is a MALICIOUS one" (quoting *Spencer v. Rhodes*, 656 F. Supp. 458, 363–64 (E.D.N.C. Mar. 19, 1987))).[13]

## V.    CONCLUSION

Accordingly, any claim against the GEO Group will be DISMISSED. Claim Two will DISMISSED for failure to state a claim for relief and as frivolous and malicious. Claims One (a) and (b) will be DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED as malicious. The Clerk will be directed to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).

---

[12] Indeed, as Chapman is quick to reference (*see* ECF No. 21, at 2–3), this case stems from an improper attempt to amend in yet another case that Chapman has been litigating since 2018. *See Chapman v. Smith*, No. 3:18CV597 (E.D. Va.) In that case, Chapman alleged many frivolous claims of perceived injustice relating to the law library. For example, Chapman complained that the institution law library was biased against him as a white male because shelves in the library identified books by black and Latino authors, because the library would not hire him as a law clerk, and because the law library had Martin Luther King, Jr. Day on the law library calendar. *See Chapman v. Smith*, No. 3:18CV597, 2021 WL 816910, at *5–8 (E.D. Va. Mar. 3, 2021).

[13] Chapman has filed at least four civil rights actions in this Court over the course of several years, all of which exude a sense of ire and wrath towards the staff at LCC. At least one has been dismissed for failure to state claim because his allegations were untimely. *Chapman v. Bullock*, No. 3:14CV463, 2016 WL 543165, at *6 (E.D. Va. Feb. 9, 2016).

16

An appropriate Order will accompany this Memorandum Opinion.


Date: 1 April 2021
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge